Peck, J.,
delivered the opinion of the court:
Benjamin H. Zellner, of the county of Monroe, in the State of Georgia, states in his petition that he had stored in the *482 warehouse of commission merchants at Macon, Georgia, thirty bales of cotton, which on or about the 21st of February, A. D., 1866, were illegally seized and carried away by Oliffcon T. Wharton, an assistant special agent of the Treasury Department. That the said cotton was soon afterwards shipped to the supervising agent of the Treasury Department, who caused the same to be transferred to Simeon Draper, at New York, where it was sold, and the net proceeds thereof paid by him into the Treasury; and he asks the judgment of this court in his behalf, for the said proceeds, “ in accordance with the third section of the act of Congress approved March 12th, 1763.”
Notwithstanding this direct averment, which is the foundation of .the claim, and the only prayer of the petition, the counsel for the claimant in their brief say:
“ This caséis not one which properly belongs to the class of cases under the act regulating proceedings of captured or abandoned property. It was neither captured nor abandoned •property collected by the Treasury agent; but it is a case where property, belonging to a citizen, was wrongfully taken by the Treasury agent, at a time when the exceptional condition of war has passed over, and when the statutes provided for times of war were no more applicable. It may be, therefore, properly questioned whether the claimant, beyond proving himself to be the owner of the property, should be held to produce the other proofs specially prescribed in cases of abandoned and captured property, and which are not required of claimants in other cases under the general law.”
Can it be properly questioned that the claimants should be held to produce the proofs specially prescribed in cases of captured and - abandoned property? We think not. Although the act generally known as the captured and abandoned property act may not have been 4n force at the time of the taking of the cotton of the claimant, so as to justify the capture, yet under the act approved June 25th, 1868, entitled “An act to provide for appeals from the Court of Claims, and for other purposes,” by the fifth section thereof it is directed, “That whenever it shall be material in any suit or claim before any court to ascertain whether any person did or did not give any aid or comfort to the late rebellion,- the claimant or party asserting the loyalty of any such person to the United States during such rebellion shall be *483 required to prove affirmatively that sncb person, did, during said rebellion, consistently adhere to the United States, and did give no aid or comfort to persons engaged in said rebellion; and the voluntary residence of any such person in any place where, at any time during such residence, the rebel force or organization held sway, shall b & prima facie evidence that such person did give aid and comfort to said rebellion and to the persons engaged therein.” This provision of the statute compels us to exact such proof in all cases like this as will satisfy our minds that the claimant, as he alleges in his petition, has at all times been loyal to the United States; and that he has at no time voluntarily aided, abetted, or given encouragement to the rebellion against the national government, as is required by the act of 12th March, 1863. This averment is directly put in issue by the defendant’s plea. In the case of Henry G-rossineyer, decided at this term, it is so held, that opinion affirming that Congress approved of the former rulings of this cotut in its requirements as to proof of loyalty, and made those rulings a guide for the future, not only in this but in all other courts. This claimant has not by evidence rebutted the prima facie case against him, which is pronounced by the statute.
The defendants did not examine any witnesses. The claimant has placed seven depositions in the record. In five only of the depositions is there any evidence about the loyalty of the claimant.
Elias Cox says:
"I was acquainted with Mr. Zellner’s sentiments as to secession and the war, and know that he was opposed to secession and the war. He did not go into the service, nor did he contribute in any way, so far as I know, to aid in the war against the United States. I heard him talk frequently about the war,, and know that he was opposed to it, and wanted the war stopped, and was for peace all the time, and was in favor of the restoration of the government of the United States; and he was esteemed by his neighbors a Union man.”
When cross-examined, he explains his meaning by stating:
“Imean by a Union mam,, one who teas opposed to the war and! secession, and alivays wamted to be in the Union and have no fuss-, about it. And his sentiments underwent no change during the war, and was known by his neighbors as a Union man. He *484 belonged to no safety committees, and was not ont with the militia. Did not belong to any company.”
It would seem that if there was to be any fuss about it, as the witness expresses it, then* his opinion might be otherwise, and his love for the Union was less than was his desire to avoid contention; this is not proving affirmatively a consistent adherence to the United States, such as would give support to the government against its enemies.
Thomas Stephens, a part of whose testimony is set out in claimant’s brief as establishing his loyalty, says: “ I know that Mr. Zellner was opposed to the war and secession, and was in favor of going back into the Union and stopping the fuss. I have heard him censured by a few of his neighbors for being a Union man, and was generally regarded as being a little too much in favor of the Union.” The word fuss is a very mild one by which to characterize the rebellion, and what import it should bear in that connection, it is not easy to determine; but it is not calculated to impress the mind with the idea that the .rebellion was regarded by the claimant as a very grave or serious matter; and that by the use of it he only succeeded in impressing his neighbors with the belief, that he was a “ little too much in favor of the Unionhow little or how much, may be inferrexlfi’om what the witness stated of himself, and those neighbors, in his cross-examination.'
“ He was tolerably popular during the war in his county, and he is now about the same. His county was, as a general thing, true to the South during the war, and claimant was recently put up as a candidate in his county for the legislature. He never heard of Mr. Zellner’s subscribing or refusing to subscribe to the cotton loan. As he was a disabled man during the war .and did not go to public meetings, he does not know whether Mr. Zellner tooh any part for or against the Confederacy. I never heard Mr. Zellner rejoicing over Confederate victories.”
The next witness says that claimant was opposed to seces■sion and to the war, and was always anxious to get bade into the Union, if a satisfactory settlement could be made. He wanted the war stopped, but never said how he wanted it stopped. From this it appears, that the consistent adherence to the United States by the claimant depended upon new conditions, and some satisfactory settlement. What those conditions were, or what the desired settlement was, we are not informed; but *485 we can readily perceive that his attachment to the United States was dependent upon some new bargain which claimant desired to have accomplished between the United States and the rebels.
This character of loyalty does not bring- the claimant within that class of persons which the law designed to benefit.
Henry P. Christian deposes that claimant was opposed to secession and the war, and was in favor of the restoration of the Union, bnt adds that he does not know of his taking part either for or against the Confederacy. This, at best, is bnt negative proof, and does not show affirmatively, as the statute requires, a consistent adherence to the United States. Claimant was but a neutral at best, not caring much what the issue of the war might be. If we apply to him the scriptural test, that he who is not for me is against me, he would be ranked with those who were not for the United States.
The only other witness who has anything to say about the loyalty of the claimant is Yorke Zellner, who calls himself a farmer and preacher. This witness had been the slave of the claimant, had known him from childhood, and served him throughout the rebellion. Yet, Yorke Zellner says : “ I do not know whether Mr. Zellner was a Union man or not. I never heard him say anything about it.”
We have presented, in almost the very words of the witnesses, all that this record contains in support of the loyalty of claimant. We have done this, because his counsel in the argument insisted with earnestness that there should not and could not be a doubt as to the certainty of claimant’s loyalty, which he insisted was beyond controversy. Having reached a different conclusion, we thought it more respectful to him to give the testimony with our opinions upon it, than to dismiss the case by stating briefly the fact that the proof was insufficient to produce upon our minds the conviction he insisted it had produced upon his.
The petition is dismissed.